ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 29 2004

LUTHER D. THOMAS, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIMBERLY E. SCOTT                    :

    Plaintiff,                       :      CIVIL ACTION FILE NO:

v.                                   :      1:04-CV-3816 BBM

GWINNETT HOSPITAL SYSTEM, INC.  :      JURY TRIAL DEMANDED

    Defendant.                       :

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Comes now, KIMBERLY SCOTT ("Plaintiff" or "Ms. Scott"), Plaintiff in the

above-styled civil action and pursuant to the Family and Medical Leave Act of 1993

("FMLA"), 29 U.S.C. §2617, files this Complaint against GWINNETT HOSPITAL

SYSTEM, INC., showing this honorable Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over this matter pursuant to 29 U.S.C §

2617, The Family and Medical Leave Act of 1993.

2.

Venue is proper in this Court pursuant to 28 U.S.C §. 1391(b) and (c) and 28

U.S.C. § 1391(b), because Defendant resides in this judicial district.

{2654/011/00026179.DOCv1}

## PARTIES

### 3.

Plaintiff is a female citizen of the United States residing in Loganville, Georgia.

### 4.

Defendant, GWINNETT HOSPITAL SYSTEM, INC. (hereafter, "GHS") is a Georgia corporation which may be served with a copy of the Summons and Complaint by and through its registered agent: Peter B. Wheeler, 100 Medical Center Boulevard, #110, Lawrenceville, Gwinnett County, Georgia 30045. This Court has jurisdiction over this Defendant.

### 5.

At all times pertinent to this action, GHS was a covered "employer" as that term is defined by 29 U.S.C. § 2611(4)(A).

### 6.

At all times pertinent to this action, Ms. Scott was a "covered employee" as that term is defined at 29 U.S.C. § 2611(2)(A) and she is therefore entitled to the protections provided by FMLA.

## FACTS

7.

For approximately 17 years, Ms. Scott was employed by GHS, during which time she had served in a supervisory position for approximately 14 of these 17 years with GHS.  Most recently, Ms. Scott was a Supervisor in GHS's Imaging Department.

8.

Between mid-2001 and September 2003, Ms. Scott suffered from severe stress and anxiety, and as a result of an emotional and physical breakdown on September 10, 2003, requested authorized FMLA leave from GHS on September 11, 2003. (Exhibit A)

9.

Ms. Scott's FMLA leave was approved by GHS effective September 11, 2003, although Ms. Scott was not formally notified of GHS' approval of her request for FMLA leave until September 21, 2003. (Exhibit B)  Ms. Scott's physician completed and returned a Medical Certification form for Ms. Scott and returned it to GHS on September 12, 2003.  (Exhibit C)

10.

On September 12, 2003, Ms. Scott's immediate supervisor and Service Line Director of Cardiovascular and Imaging Services, Patrick M. Green ("Mr. Green") disseminated a memorandum to GHS employees stating, in relevant part, that

{2654/011/00026179.DOCv1}

"effective immediately, Kim Scott is out on leave" and informing everyone that Linda Hooks would be assuming Ms. Scott's duties.

11.

On September 13, 2003, Ms. Scott's GHS-issued beeper was turned off, and her remote access to GHS's computer and voicemail systems were terminated. (Exhibit D)

12.

On September 25, 2003, only two (2) weeks into her approved FMLA, leave, Ms. Scott's office was reassigned to another GHS employee, Linda Hooks.

13.

On September 27, 2003, Mr. Green and GHS's Associate Advocate, Mary McNeil ("Ms. McNeil") contacted Ms. Scott at home to inquire about her anticipated return date.   On September 23, 2003, Ms. Scott had already previously informed GHS's Benefits Coordinator, Karen Thompson of her anticipated return date.

14.

On or about October 30, 2003, Ms. Scott was released by her physician to return to work.

15.

On November 6, 2003, Ms. Scott contacted both Ms. McNeil and Donna Hardgrove to inquire whether they had received her physician's certification to return to work to ensure a smooth return to work. Ms. Scott received no return telephone call

{2654/011/00026179.DOCv1}

from Ms. McNeil.

16.

On November 6, 2003, Ms. Scott also telephoned Mr. Green to inform him of her intent to return to work on November 10, 2003. The same day, Mr. Green announced to GHS' Imaging Department that Ms. Scott was not returning to work, and that Ms. Hooks was assuming Ms. Scott's former duties.

17.

On November 7, 2003, Mr. Green telephoned Ms. Scott at home to inform her that upon her return to GHS, she is to immediately report to him.

18.

On November 10, 2003, less than 12 weeks after her authorized FMLA leave began, Ms. Scott attempted to return to work at GHS.  However, upon her return, she found her office had been assigned to another GHS employee, found her personal belongings packed in a box, and found that her name had been removed from GHS's Imaging Services telephone directory. (Exhibit E)

19.

Prior to Ms. Scott's actual return to work, Mr. Green had already announced to GHS's Radiology/Imaging Department that Ms. Scott would not be returning to her former position. Several individuals of GHS's Radiology/Imaging Department heard Mr. Green make this announcement.

{2654/011/00026179.DOCv1}

20.

In fact, Mr. Green had already replaced Ms. Scott and filled her former position with Linda Hooks during Ms. Scott's authorized FMLA leave. (Exhibits F and G)

21.

On November 10, 2003, the date of Ms. Scott's return to work, Mr. Green presented her with two (2) written disciplinary counselings for incidents which had allegedly occurred in August and early September, 2003.  Although Ms. Scott had personally met with Mr. Green and Ms. McNeil prior to her FMLA leave and no mention of these incidents were raised by Mr. Green.

22.

Almost immediately thereafter, Mr. Green effectively demoted Ms. Scott to a temporary and non-supervisory staff position working in GHS's film library, located in a warehouse near GHS's Receiving Department, separate from GHS's main campus. Ms. Scott was also directed by Mr. Green to "avoid contact with her prior staff during working hours." (Exhibit H)

23.

In this new position, although her compensation remained the same as it was prior to her FMLA leave, Ms. Scott's duties were significantly different from her former duties inasmuch as she was stripped of her supervisory and management duties and was excluded from all meetings of the Radiology/Imaging Department.  Ms.

{2654/011/00026179.DOCv1}

Scott's new duties including primarily creating reports to track physician referrals.

24.

On January 30, 2004, Ms. Scott's employment with GHS was terminated.

25.

Following its own investigation of Ms. Scott's allegations, the Wage and Hour

Division of the U.S. Department of Labor found that GHS failed to return Ms. Scott to

her position, or an equivalent one. (Exhibit I)


COUNT I

INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER
THE FAMILY AND MEDICAL LEAVE ACT OF 1993

26.

Plaintiff realleges the allegations contained in paragraphs 1 - 25 as if fully set

forth herein.

27.

FMLA authorizes up to 12 weeks of leave during any 12-month period because

of a serious health condition.  Thereafter, the employee is entitled to be restored to her

original position, or an equivalent one, with equivalent benefits, pay and other terms of

employment.

{2654/011/00026179.DOCv1}

28.

Because of a serious health condition, Ms. Scott required leave from GHS as contemplated and authorized by the FMLA.

29.

Ms. Scott requested from GHS and received authorized FMLA leave from approximately September 11, 2003 through November 10, 2003 due to a serious health condition.

30.

On November 10, 2003, less than 12 weeks after her FMLA began, Ms. Scott attempted to return to work at GHS, intending to resume the position she occupied immediately prior to her FMLA leave.

31.

Immediately following Plaintiff's return to work on November 10, 2003, Ms. Scott was counseled by Mr. Green for alleged incidents which occurred in August and September, 2003.

32.

Almost immediately thereafter, Mr. Green effectively demoted Ms. Scott to a temporary and non-supervisory staff position working in GHS's film library, located in a warehouse near GHS's Receiving Department, separate from GHS's main campus. Ms. Scott was also directed by Mr. Green to "avoid contact with her prior staff during

working hours." (Exhibit H)

### 33.

In this new position, although her compensation remained the same as it was prior to her FMLA leave, Ms. Scott's duties were significantly different from her former duties inasmuch as she was stripped of her supervisory and management duties and was excluded from all meetings of the Radiology/Imaging Department.  Ms. Scott's new duties including primarily creating reports to track physician referrals.

### 34.

On January 30, 2004, Ms. Scott's employment with GHS was terminated.

### 35.

As a result of GHS's intentional and unlawful employment practices, Ms. Scott is entitled to injunctive relief enjoining GHS from engaging in such unlawful practices in the future, and such other relief as may be appropriate, including but not limited to reinstatement with double backpay, reasonable attorney's fees and costs of litigation.

{2654/011/00026179.DOCv1}

## COUNT II

## RETALIATION AGAINST PLAINTIFF FOR EXERCISING HER RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993

### 36.

Plaintiff realleges the allegations contained in paragraphs 1 - 35 as if fully set forth herein.

### 37.

At approximately 12:45 p.m. on September 11, 2003, Mr. Green telephoned Ms. Scott and expressly informed her that if she exercised her federally-protected FMLA rights and took FMLA leave that she would be out of a job.

### 38.

On or about the time of Ms. Scott's return from her authorized FMLA leave, she applied for and requested interviews for several open and available supervisory positions at GHS, all of which were blocked by Mr. Green.

### 39.

Upon her return to GHS following her FMLA leave, Mr. Green effectively demoted Ms. Scott to a temporary and non-supervisory staff position working in GHS's film library, located in a warehouse near GHS's Receiving Department, separate from GHS's main campus. Ms. Scott was also directed by Mr. Green to "avoid contact with her prior staff during working hours." (Exhibit H)

{2654/011/00026179.DOCv1}

40.

In this new position, although her compensation remained the same as it was prior to her FMLA leave, Ms. Scott's duties were significantly different from her former duties inasmuch as she was stripped of her supervisory and management duties and was excluded from all meetings of the Radiology/Imaging Department.  Ms. Scott's new duties including primarily creating reports to track physician referrals.

41.

On January 30, 2004, Ms. Scott's employment with GHS was terminated.

42.

As a result of GHS's intentional and unlawful employment practices, Ms. Scott is entitled to injunctive relief enjoining GHS from engaging in such unlawful practices in the future, and such other relief as may be appropriate, including but not limited to reinstatement with double backpay, reasonable attorney's fees and costs of litigation.

{2654/011/00026179.DOCv1}

## COUNT III

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43.

Plaintiff realleges the allegations contained in paragraphs 1 - 42 as if fully set forth herein.

45.

The willful actions and conduct of Defendant as set forth above were so egregious so as to naturally humiliate, embarrass, and outrage Ms. Scott.

46.

The emotional distress suffered by Plaintiff was so severe that no reasonable person could have been expected to endure it.

47.

Defendant's acts show willful misconduct, malice, or that entire want of care which would raise the presumption of a conscious indifference to the consequences, as a result of which Plaintiffs are entitled to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

48.

As a direct and proximate result, Plaintiff has been harmed in an amount to be specifically proven at trial.

{2654/011/00026179.DOCv1}

WHEREFORE, Plaintiff prays as follows:

a.     that the Court enjoin GHS from engaging in unlawful employment practices in the future;

b.     that the Court order that Ms. Scott be reinstated and awarded back pay, restoration of all rights and privileges, fringe benefits, and prejudgment interest since the date of its termination of Plaintiff;

c.     that the Court award Plaintiff her reasonable attorney's fees, expert witness fees, and costs of litigation;

d.     that the Court award Plaintiff special and allowable compensatory damages;

e.     that the Court award Plaintiff punitive damages in an amount to be determined by the enlightened conscience of an impartial jury; and

f.     all other relief this Court deems proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL JURY ISSUES

Respectfully submitted,

Dean R. Fuchs
Georgia Bar No. 279170

SCHULTEN WARD & TURNER, LLP
260 Peachtree Street, NW
Suite 2700
Atlanta, Georgia 30303
(404) 688-6800
{2654/011/00026179.DOCv1}

## GWINNETT HOSPITAL SYSTEM
## ASSOCIATE TIME OFF REQUEST FORM

**INSTRUCTIONS:** To be completed by the associate. Original to be returned to Karen Thompson in the Human Resources Department within five (5) days of receipt (fax number 770/682-2244). This form should be completed for any absence from work related to personal (non-vacation), military or FMLA leave.

**ASSOCIATE INFORMATION:**

1. Associate's Name: _Kimberly E. Scott_
2. Associate's Social Security Number: ▮▮▮▮▮▮
3. Associate's Address: _2640 Johnson Rd._
   _Loganville GA 30052_
4. Associate's Home Phone #: ▮▮▮▮▮▮
   Associate's Work Phone #: _678-442-4466_
5. Name of Person Completing Form (if not associate): _____

6. Purpose of time off (check all that apply):

a. _____ Because of the birth of a child and to care for the newly born child, OR placement of a child with the associate for adoption or foster care.

b. _____ To care for an immediate family member (spouse, child or associate's parent) with a serious health condition.

c. _X_ Because of the associate's serious health condition which makes the associate unable to perform the functions of the associate's job.

d. _____ Recreation or pleasure

e. _____ Personal (explain): _____

f. _____ Military

g. _X_ Other reason: _See attached sheet = Workman Comp._

7. If the leave involves the serious health condition of the associate or immediate family member, is the associate requesting an intermittent leave or leave on a reduced work schedule?

   _____ Yes     _X_ No (if answer is no, skip question #8)

8. Explain why intermittent leave or leave on a reduced work schedule is necessary and the schedule for medical treatment:
   _____
   _____

**DATES OF LEAVE AND NOTIFICATION:**

9. Anticipated starting date of leave: _9-11-03_
10. Anticipated ending date of leave: _9-12-03_
11. Today's date: _9-12-03_

12: Was GHS notified about the leave at an earlier date?  (If answer is NO, skip question #14)

___X___ Yes          _____ No          On 9-11-03 around 7pm to
Donna Holgate, Maur McNeil, P.Green
OC Health
via vm.

13. Present Supervisor's Name: _Patrick Green_____

    Department: _Imaging_____

    Supervisor's Phone Number: _678-443-4797_____

14. Date of earlier notification: _Around 6-20-03_____

15: Who was notified?: _Mary McNeil in reference to stress +
    mental, physical feelings I was having._ Nothing about
    requesting leave
    at that time
    however.

16. Has 30 days advance notice of leave been given?  (If answer is yes, skip Question 18).

    _____ Yes          ___X___ No

17. Explanation for delay in providing notice to GHS: _Thought I could keep/
    continue to handle mental + physical issues that have
    + continue to happen. The mental abuse starting around 3 or 4 of 2001._
    physical - hands working                              (March/April)

**COMPENSATION DURING LEAVE:**

18. a.  ___X___  Paid Time Off (PTO)
    b.  ___X___  Paid Extended Illness Bank (EIB)
    c.  _____  Unpaid Family and Medical Leave
    d.  ___X___  Other type: _Workman Comp._____
        Reason: _Mental + physical impact to self
        working in Imaging over past 3 years._

**INTENTION TO RETURN TO WORK: (Select One)**

    a.  _____  I will not be returning to work at GHS.
    b.  ___X___  I intend to return to work at GHS.

**CERTIFICATION:**

19. I certify that the above information is true and correct to the best of my knowledge.  I understand that any intentional misrepresentation concerning the above facts can result in the termination of my employment.

20. Signature of person completing this form: _Timbela Evitt_____

21. Date: _9-12-03_____

22. **Personal leave requires the signature of associate's supervisor/manager:**
    Supervisor/Manager's signature: _____

    (**FMLA qualifying leave does not require supervisor/manager's signature**)

_I am, and have contacted Occupational Health
and informed them on 9-11-03 around 7pm, and
verbally to ~~Lisa (Amy)~~ Trina Michelle (not for sure of name) on 9-12-03
around 8:30-9pm. Kim - Director was in a meeting. OC Health
was going to call me back.
I _____ action with FMLA + Workman comp. Per Dr._



# GWINNETT HEALTH SYSTEM
### PROMINA

*Recd 9/21/03*

September 17, 2003

Ms. Kimberly Scott
2640 Johnson Road
Loganville, Georgia 30052

*left message tentative start Date 11/11 @ 9:08am 9/23/03*

Dear Kim:

This letter is intended to notify you of you rights and responsibilities with respect to your requested absence. I appreciate you taking the time to read it carefully, and will gladly support and assist you if you need further clarification.

Following the Family and Medical Leave Act of 1993, eligible associates may receive up to twelve weeks of leave during a twelve-month period. Eligible associates must have worked for GHS for twelve (12) months and have worked a minimum of 1,250 hours during the year preceding the start of their requested leave.

Your leave beginning September 11, 2003 has been designated as a Family and Medical Leave Absence (FMLA). GHS will count any reduction of schedule, absence and the above requested leave against your annual FMLA entitlement.

While you are out on FMLA leave, GHS will require that you use all PTO/EIB before going on unpaid leave. During your leave, GHS must maintain your health insurance benefits under the same conditions as if you were still working, and we must reinstate you to the same or an equivalent job with the same pay, benefits, and terms/conditions of employment on your return from leave.

If you continue to receive a paycheck, we will make insurance deductions from your check. If you exhaust your PTO/EIB balances, it will become your responsibility to make payments for your premiums. You will receive a written notification, reminding you of your responsibility to pay for premiums. Again, during FMLA leave these premiums will be at the same price you would have deducted from your paycheck for these benefits.

To return to work you must follow these instructions:

1.  You have stated your intent to return to work; however, you have not give a date. Please call me with this date and if this date should change. If you do not return to work, you will be subject to termination and the cessation of all benefits but continued health benefits under COBRA. If you do not state your intention to return to work, or choose not to return to work we will terminate employment.



FMLA, Page 2

2.    **We will require that you present a fitness for duty note from your health care provider certifying that you can return to work** (This is a separate note from the medical certification form). Any restrictions to your position will need to be approved by Occupational Health prior to your return. You can give your note to me in Human Resources before your return to work.  If we do not receive such certification, we may delay your return to work until you provide the certification.

I enclose a copy of the GHS Family and Medical Leave policy for your review.  Please contact me personally at 678-442-3394 if I can b of assistance.

Sincerely,

Karen Thompson
Human Resources Consultant

/kt
Enclosures:     FMLA Policy

# GWINNETT HOSPITAL SYSTEM
## MEDICAL CERTIFICATION FORM
### Relating to Associate's Medical Condition

TO BE COMPLETED BY ASSOCIATE:
1. Associate's Name: _Kimberly E. Scott_
2. Associate's Social Security #: _____
3. Associate's Current Address: _2640 Johnson Rd_
   _Loganville GA 30052_
4. Associate's current phone number: _____

AUTHORIZATION:
I authorize my physician or other health care practitioner to disclose to Gwinnett Health System, Inc., a medical, mental health and drug or alcohol treatment information concerning me that is required to complete this form. This information will be used in connection with my request for family and medical leave. A photocopy of this form is valid as the original. The person who signs this form may have a copy of it upon request.

5. Associate's Signature: _Kimberly E. Scott_
6. Date Signed: _9-12-03_

TO BE COMPLETED BY PHYSICIAN OR PRACTITIONER:
7. A. Diagnosis of patient's condition*: _Excessively Stressful_
   _work situation leading to anxiety depression_

B. The attached sheet describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

   (1) ___ (2) ___ (3) ___ (4) ✓ (5) ___ (6) ____ OR None of the above

8. Date condition commenced: _9.11.03_

9. Your best medical judgement concerning the probable duration of condition:
   _6-12 weeks_

10. Will it be medically necessary for the associate to work intermittently or to work a reduced schedule as result of the condition (involving treatment)?
    ☐ Yes        ☒ No

    If yes, give the probable duration: _____

11. If the condition is a chronic condition or pregnancy, state whether the patient is currently incapacitated and the likely duration and frequency of episodes of incapacity.
    ☒ Yes        ☐ No

    If yes, give the probable duration: _6-12 weeks_


C:\Documents and Settings\Kimberly\Local Settings\Temporary Internet Files\Content.IE5\73HF7T8W\2[1].doc



12. Regimen of treatment prescribed for the patient's condition (you may attach additional pages if necessary)
 • Indicate the estimated number of visits, and the general nature, frequency, and duration of treatment including referral to other provider(s) of health services.
 • Include a schedule of visits or treatments if it is medically necessary for the associate to be off work on an intermittent basis or to work less than the associate's normal schedule of hours per day or days per week.

a) By the physician or practitioner: _Medication_ _Effexor, Ambien_ _Buspar and to seek_ _individual counceling_ _individual treatment therapy_

b) By another provider of health services, if referred by the physician or practitioner?
_____
_____
_____

13. Is inpatient hospitalization of the patient required?
   ☐ Yes      ☒ No

14. Is the associate able to perform work of any kind?
   ☐ Yes      ☒ No

15. If able to perform some work, is the associate unable to perform one or more of the essential functions of the associate's position? Answer this question after reviewing the statement from Gwinnett Health System of the essential functions of the associate's position or, if none has been provided, after discussion with the associate about the associate's job functions.
   ☐ Yes      ☐ No      ∽ |∩

If no, please identify the essential functions the associate is able to perform:
_____
_____
_____

16. Signature of physician or practitioner: _Mahendra_

17. Name of physician or practitioner: _MAHENDRA R. SHAH, m.D._
18. Type of practice (including field of specialization, if any): _Psychiatry_

19. Date signed: _9.12.03_

After this form has been fully completed, it should be placed in an envelope marked "Confidential Medical Information" and sent to the following address:

   Karen Thompson
   Family & Medical Leave Coordinator
   Gwinnett Hospital System
   Human Resources Department
   100 Medical Center Boulevard, Suite 206
   Lawrenceville, Georgia 30245

C:\Documents and Settings\Kimberly\Local Settings\Temporary Internet Files\Content.IE5\T3HP778W\2[1].doc

Novell WebAccess

## GroupWise® WebAccess

Login
Your mailbox is unavailable. Please contact your
system administrator.

Username:

kscott

Password:

| Login | Help |

Language Setting Information

© Copyright 1993-2002 Novell, Inc. All rights reserved.
Version 6.5



https://ghsmail.ghsnet.org/servlet/webacc

9/13/2003

# IMAGING SERVICES
## Revised 11/03/03

|  | **PHONE** | **BEEPER** | **HOME** |
|---|---|---|---|

**BAY, Lea,** Vice-President

**BLAIR, Joe,** Education Coordinator

**BURNETT, Richard,** Quality Improvement Cord.

**DELAWALLA, Jenny,** Supervisor, MRI

**DORFLING, Theresa** Supervisor Cardiology

**FIELDS, Vickie,** Supervisor @ JGMH

**FITZPATRICK, Ann,** GOC Manager

**FORD, Kim,** Supervisor GMC (Evening Shift)

**GILSTRAP, Dottie,** Supervisor, GMC Main Dept.

**GLUBKA, Melva,** Radiology Nurse Super GMC

**GREEN, Patrick,** SLD, Cardiovas & Imaging Srvcs

**HAMILTON, Libbie,** Manager

**HINESLEY, Dawn,** Supervisor GOC

**HOLLINGSWORTH, Lisa,** Supervisor, Cath Lab

**HOOKS, Linda,** Supervisor, Film File Lib/Front Office

**JONES, Dawn,** Supervisor, GMC Scheduling

**KUBIK, Karen,** Manager, 575 OIC

**LITTEL, Lorie,** Supervisor, GWP,Webb

**MONCRIEF, Scott,** Marketing Assistant

**PEREZ, Patty,** Sr Admin. Assistant

**POLLY, Melissa,** Referral Dev. Coordinator

**STEIN, Chris,** Supervisor, Nuclear Medicine

**STEPHENS, Linda** Supervisor @ GMC (Weekends)

**THOMASON, Chris,** Director, Cardiovascular Srcs.

**WALLACE, Mike,** Supervisor, Ultrasound

( REDACTED )



C:\WINDOWS\TEMP\GW}00001.TMP

**Mail Envelope Properties**   (3FA6BCDA.E18 : 16 : 61837)

**Subject:**          Card and Imaging Updated Phone Listing
**Creation Date:**    11/3/03 3:38PM
**From:**             Patty Perez

**Created By:**       PPerez@ghsnet.org

**Recipients**
ghsnet.org
  GHS_PO.GHS
    LHolling (Lisa Hollingsworth)

ghsnet.org
  GHSPO1.GHS
    CBailey (Curtis Bailey)
    SMoncrie (Scott Moncrief)

ghsnet.org
  GHSPO2.GHS
    AFitzpatrick (Ann Fitzpatrick)
    CStein (Chris Stein)
    CThomaso (Christine Thomason)
    DGilstrap (Dorothy Gilstrap)
    DHinesley (Dawn Hinesley)
    DSJones (Dawn Jones)
    GKeil (Ginger Keil)
    JBerch (Joseph Berch)
    JBlair (Joe Blair)
    JDelawal (Jenny Delawalla)
    KFord (Kimberly Ford)
    KKubik (Karen Kubik)
    lhamilto (Libbie Hamilton)
    LHooks (Linda Hooks)
    LLittell (Lorie Littell)
    LStephen (Linda Stephens)
    MBenitez (Maria Benitez)
    MGlubka (Melva Glubka)
    MPolly (Melissa Polly)
    MWallace (Michael Wallace)
    PGreen (Patrick Green)
    PPerez (Patty Perez)
    RBurnett (Richard Burnett)
    TDorflin (Theresa Dorfling)
    VFields (Vickie Fields)

This went out to every person who has email or connected to GHS server.



# Gwinnett Hospital System

**MEMORANDUM**

**To:**  Management Group
All of Imaging Associates
Radiologists

**From:**  Patrick M. Green, Service Line Director, Cardiovascular and Imaging Services

**Subject:**  Imaging Supervisor

**Date:**  September 12, 2003

_____

_____

Effective immediately, Kim Scott is out on leave.

Linda Hooks will assume supervisory duties effective today over Imaging Clerical at GMC.  Linda can be reached at extension 3460 or by beeper (404) 743-6497.

Please join me in support of Linda in this effort.

PG/pjp



**From:** Patrick Green
**To:** All of Gwinnett
**Date:** 11/11/03 3:56PM
**Subject:** GMC Imaging Front Office

I would like to welcome Linda Hooks, who has been filling in as the interim Supervisor for GMC Imaging Front Office, as the permanent Supervisor for GMC Imaging Front Office!   Linda also manages the Imaging Film File functions within the hospital system.

Kim Scott has moved into a project role to support Imaging Management.


Patrick M. Green
Service Line Director, Cardiovascular & Imaging Services
Office   678 442-4797
Fax      678 442-3651
Beeper 404 743-2927



| | |
|---|---|
| **From:** | Patrick Green |
| **To:** | Scott, Kimberly |
| **Date:** | 11/10/03 7:57AM |
| **Subject:** | Transition Plan |

This is to document the plan I am discussing today:

Immediate transfer to a staff position.

Position will be based out of FFL office space.

Pay grade and rate will stay in place until 2/1/04.

Kim will make every effort to avoid contact with her prior staff during work hours.

Kim to help develop and run management reports as directed during the transition.

Liberal concessions will be made for Kim's time to conduct a job search.  Kim will need  to schedule time off with Patty as time keeper.

On 2/1/04 position will be terminated.

Patrick M. Green
Service Line Director, Cardiovascular & Imaging Services
Office   678 442-4797
Fax      678 442-3651
Beeper 404 743-2927

**CC:**          McNeil, Mary



U.S. DEPARTMENT OF LABOR
WAGE AND HOUR DIVISION
61 FORSYTH STREET, S.W., Room 7M10
ATLANTA, GEORGIA   30303

January 23, 2004

**Kimberly Scott**
**2640 Johnson Road**
**Loganville, Georgia   30052**

Dear Ms. Scott:

RE: Gwinnett Hospital System

This is in reference to the information that you sent to this Department concerning the Family and Medical Leave Act.

The Wage and Hour Division is responsible for the enforcement of the Family and Medical Leave Act (FMLA).  The FMLA is the Federal law of general application which provides up to 12 workweeks of **unpaid**, job protected leave to eligible employees for certain specified family and medical reasons; to maintain eligible employees' pre-existing group health insurance coverage during periods of FMLA leave; and to restore eligible employees to their same or an equivalent position at the conclusion of their FMLA leave.

Investigator Berdelle Johnson has concluded the FMLA investigation of Gwinnett Hospital in reference to your complaint.  Ms. Johnson has found that one violation of FMLA could be substantiated.  The cited employer did not return you to an equivalent position, however, you received the same pay.  Since there is no monetary violation, and the fact that you no longer work for the firm, there is no remedy available in this situation.

This letter is to notify you that this Department will not take action on the information that you provided. The fact that we will take no further action on your behalf does not affect your private right under the FMLA, Section 107 (copy attached), to bring an independent suit to recover any back wages/damages due.  The Department of Labor does not encourage or discourage such suits.  The decision is entirely up to you.  However, keep in mind that recovery of any claim under this law is subject to a two-year statute of limitations.  Generally, this means that any part of a claim which is more than two years before suit is filed may not be collectable.

Sincerely,

*Wage Kotowski*

Wayne Kotowski
Assistant District Director

Attachment: Family and Medical Leave of 1993